# UNITED STATES DISTRICT COURT

## For the District of Columbia

| | |
|---|---|
| **Plaintiff(s)** | Case: 1:25-cv-00232 JURY DEMAND |
| TANISHA SMITH AND N.I.V. | Assigned To : Unassigned |
| by and through Tanisha Smith, next friend | Assign. Date : 1/23/2025 |
| | Description: Pro Se Gen. Civ. (F-DECK) |
| **-against-** | )  **JURY TRAIL DEMANDED** |
| | ) |
| WASHINGTON METRO AREA TRANSIT AUTH. POLICE DEPT. | ) |
| RANDY CLARKE,  VALERIE SANTOS, | ) |
| MICHAEL ANZALLO, LIEUTENANT LOUIE. WHITE, | ) |
| SARGEANT W. TABB,  OFFICER T. ARTIS, | ) |
| OFFICER N. CRAWFORD,  OFFICER C. ANGUISACA, | ) |
| OFFICER K. ANDERSON AND  SARGEANT G. RICH | ) |
| **Defendants(s)** | ) |

# COMPLAINT FOR VIOLATION OF CONSTUTIONAL RIGHTS

## I. Introduction:

Plaintiff Tanisha Smith and her minor child, N.I.V. residents of the State of Texas

brings this federal civil action under 42 U.S.C.§ 1983  against Defendant(s)

Washington Metropolitan Area Transportation Authority Police Department

(hereinafter collectively referred to as "WMATA"),  and it's associated Officials

for deprivation of rights, which includes failure to investigate,  uses of  excessive

force, assault and battery, wrongfully arrest, sexual assault, unlawful search and

seizure, fabricating evidence, wrongful detention and kidnapping, which caused

Plaintiff(s) significant physical, phycological and emotional damages.

## II. THE PARTIES TO THIS COMPLAINT

### A.   Plaintiff(s)

**1.   Tanisha Smith**

23144 Cinco Ranch Blvd, Ste B #1017, Katy, TX 77494

Email: TanishaYhshrl@Gmail.com

Tanisha Smith is the natural mother and legal guardian of N.I.V.

**2.   N.I.V. (Minor, represented by and through Tanisha Smith, next friend)**

23144 Cinco Ranch Blvd, Ste B #1017, Katy, TX 77494

### B.   Defendant(s)

**1.   Washington Metro Area Transit Authority Police Dept.**

600 5th Street NW, Washington, DC 20001

Phone: (202) 637-1328

**2.   Randy Clarke**

General Manager and CEO, WMATA, in his official capacity.

300 7th Street, SW, Washington, D.C. 20024

Phone: (202) 637-1328

3.    **Valerie Santos**

Chair of the WMATA Board, in her official capacity.

600 5th Street NW, Washington, DC 20001

Phone: (202) 637-1328

4.    **Michael Anzallo**

Chief of Police, WMATA, in his official capacity.

3421 Pennsy Drive, Hyattsville, MD 20785

Phone: (202) 962-2121

5.    **Louie White**

Police Lieutenant, WMATA, in his official and individual capacity.

3421 Pennsy Drive, Hyattsville, MD 20785

Phone: (202) 962-2121

6. **W. Tabb**

   Police Sargeant, WMATA, in his official and individual capacity.

   3421 Pennsy Drive, Hyattsville, MD 20785

   Phone: (202) 962-2121

7. **T. Artis**

   Police Officer, WMATA, in her official and individual capacity.

   3421 Pennsy Drive, Hyattsville, MD 20785

   Phone: (202) 962-2121

8. **N. Crawford**

   Police Officer, WMATA, in his official and individual capacity.

   3421 Pennsy Drive, Hyattsville, MD 20785

   Phone: (202) 962-2121

9.   **C. Anguisaca**

Police Officer, WMATA, in his official and individual capacity.

3421 Pennsy Drive, Hyattsville, MD 20785

Phone: (202) 962-2121

10.  **K. Anderson**

Police Detective, WMATA, in his official and individual capacity.

3421 Pennsy Drive, Hyattsville, MD 20785

Phone: (202) 962-2121

11.  **G. Rich**

Police Sargeant, WMATA, in his official and individual capacity.

3421 Pennsy rive, Hyattsville, MD 20785

Phone: (202) 962-2121

## III. CAPACITY AND AUTHORITY

**Tanisha Smith**

A Texas resident, brings this federal civil action under Federal Rule of Civil Procedure 17(b) and 17(c) as the legal guardian of disabled minor, N.I.V. Both Plaintiffs asserts constitutional violations under 42 U.S.C. § 1983 and demand justice for the damages caused by Defendants.

**The Washington Metropolitan Area Transit Authority Police Dept.** (WMATA) is a public entity created by an interstate compact between D.C., Maryland, and Virginia, governed by the WMATA Compact Act. Under said act, *specifically 9 D.C. Code § 1107.01, Title 3, Article 3, Section 5(b)*, WMATA, its Board of Directors, and officials are required to take a sworn oath to support and defend the U.S. Constitution and its Laws. Pursuant to *9 D.C. Code § 1107.01, Title 3, Article 5, Sections 12(a) and 9(e), i*n the event WMATA, its Board of Directors, and officials fail to uphold The Supreme Law of the Land, legal action can be taken. WMATA has the authority to "sue and be sued, WMATA is sued due to Metro Transit Police officers operating **outside of their official capacities**, and for failing to enforce and implement training focused on upholding the U.S. Constitution. Said failure has caused constitutional, physical, phycological and emotional damages to be inflicted upon Plaintiff(s), Tanisha Smith and N.I.V., at the hands of WMATA's police.

## Randy Clarke

General Manager and CEO of WMATA, is sued in his official capacity and is responsible for overseeing and directing the actions of the WMATA Police Division. As the highest-ranking official at WMATA, Mr. Clarke is liable for the actions of his subordinates, as well as failure to implement adequate oversight and training to prevent constitutional violations.

## Valerie Santos

As the Chairperson of the Board of WMATA, Valerie Santos holds a significant leadership role with shared responsibility alongside Defendant Clarke to oversee the operations of WMATA, including the conduct and actions of its various divisions. This includes direct oversight of the WMATA Police Division and its officers. Given her position, Santos is not only responsible for ensuring that WMATA adheres to all legal and ethical standards, but also for the actions and/or failures to act within the WMATA Police Division. She bears partial responsibility for the conduct of the officers, particularly for failing to implement adequate mechanisms to ensure that constitutional laws and policies are followed. Due Process violations occurred under her watch. Therefore, she is being sued in her official capacity for failure of duty within the WMATA Police division.

## Michael Anzallo

Defendant Michael Anzallo, Chief of Police for WMATA, is responsible for ensuring that WMATA police officers are properly trained and that they adhere to constitutional standards. As Chief, Mr. Anzallo is sued in his official capacity and shares equal liability for failing to implement policies and procedures set forth in WMATA General Order, Metro Transit Police Subject: Contact, Stops and Frisk order number 325, in addition to general order Subject: Arrest Policy number 601 which would have prevented the unconstitutional actions committed by his officers.

**Lieutenant Louie White, Sargeant W. Tabb, Officer T. Artis, Officer N. Crawford, Officer C. Anguisaca, Police Detective K. Anderson, and Sargeant G. Rich** Are employees and/or agents of WMATA, these individuals acted under color of law on March 15, 2024. Officers performed actions outside the scope of WMATA's procedures and breached their duties, causing harm to Plaintiffs Tanisha Smith and N.I.V., for which officers are liable. Under WMATA's Metro Transit Police Department Policy Manual, ***Chapter 1, Section 104 (Oath),*** all officers in this case took a sworn oath to uphold the United States Constitution. These individuals are sued in both their official and individual capacities. The individual Defendants are responsible for violating clearly established and protected constitutional rights pursuant to **42 U.S.C. § 1983**. Therefore, all police officials in this case are NOT entitled to qualified immunity, as recognized in precedent-setting cases such as **Terry v. Ohio,** 392 U.S. 1 (1968), **Graham v. Connor**, 490 U.S. 386 (1989), and **Smith v. City of Santa Clara**, 876 F.3d 987 (9th Cir. 2017). Officers breached their capacity.

## IV. STATEMENT OF JURISDICTION AND VENUE

**Jurisdiction:**

This Court has jurisdiction under 28 U.S.C. § 1331 because this case involves violations of federal laws. Plaintiff(s) assert constitutional breaches of their First Amendment, Fourth Amendment and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983.  Jurisdiction is also proper under 28 U.S.C. § 1332(a) because Plaintiff(s)  reside in Texas, and Defendants reside in Washington, D.C., and Maryland.  Additionally, the amount in controversy exceeds $75,000, thereby establishing jurisdiction.

**Venue:**

Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(c)(2) because WMATA's principal place of business is in Washington, D.C., where WMATA is also subject to personal jurisdiction.

## V. STATEMENT OF FACTS

### 1. Incident at Shady Grove and Largo Train Station's

On or about March 15, 2024, at approximately 5:00 PM, Ms. Smith and her son were in the vicinity of WMATA preaching at Shady Grove Station, located in Maryland. Tanisha Smith and her son, N.I.V., later left and was in transition to D.C.

While passing through the payment gate, N.I.V.'s bookbag strap got caught. At that point, Aryana Ingram made a derogatory comment, suggesting that the Plaintiffs would "kill themselves trying to catch the train" due to the bookbag strap being caught in the gate.

In response, Ms. Smith stated, "God forbid." Ms. Ingram clarified that she was not referring to Ms. Smith and her son. Ms. Smith replied, "okay." And then proceeded to the train.

Shortly after, Ms. Ingram followed the plaintiffs onto the platform. Ms. Smith placed her heavy bookbag on the ground, to relieve herself of the weight while they waited for the train. Ms. Ingrim initiated another confrontation with Ms. Smith and stated, " What the f**k are you putting your bag down for?" "I will knock you the f**k out!" Ms. Smith replied, "Whatever," and kept her distance from Ms. Ingram.

Afterwards the train arrived, to avoid further conflict Plaintiffs boarded a separate train cart. However, Ms. Ingram followed them and initiated another altercation, which escalated when she physically attacked Ms. Smith.

Despite being significantly older and smaller than Ms. Ingram. Ms. Smith defended herself, and restrained Ms. Ingram, which was captured on Cell phone video, recorded by N.I.V.

Ms. Ingram began pleading with Ms. Smith to let her go. Ms. Smith agreed to release Ms. Ingram under the condition that Ms. Ingram would not attack her again.

Ms. Smith did not sustain any serious physical injuries, and her overall health remained intact. As a result, she gave Ms. Ingram an ultimatum: if Ms. Ingram honored their agreement and refrained from attacking Ms. Smith upon her release, Ms. Smith would not press charges if the police arrived. The plaintiff(s) parted ways with Ms. Ingram.

## 2. Failure to Investigate

After the altercation, Tanisha Smith and N.I.V. boarded another train car, sat down, and activated their body camera. Approximately five minutes later, WMATA Officers C. Anguisaca and N. Crawford arrived at the Plaintiffs' location. The officers were nonverbal and failed to ask the Plaintiffs any questions.

### 3. False Arrest of the Plaintiffs

Plaintiff Tanisha Smith offered to show the officers cell phone video evidence, which would have proven they were the actual victims. However, WMATA police officers ignored Ms. Smith's request to present the footage. Without investigating, the officers immediately detained and restrained the Plaintiffs without probable cause or verbal communication. By doing so, the officers violated the Plaintiffs' Fourteenth Amendment rights and deprived them of due process under 42 U.S.C. § 1983.

### 4. Excessive Force Used by WMATA Police, 42 U.S.C. § 1983.

During the arrest, the Plaintiffs were subjected to excessive force. Officer C. Anguisaca and Officer N. Crawford forcefully pinned Ms. Smith down and violently twisted her arms to place her into handcuffs. Officer T. Artis arrived with OC spray in hand and pepper-sprayed disabled minor N.I.V. multiple times, causing unbearable pain and suffering, including temporary loss of his vision.

5. At the same time, Officer N. Crawford and Officer C. Anguisaca tore a ligament in   Ms. Smith's right shoulder. Hearing her child cry in agony, combined with the shoulder pain she was experiencing, Ms. Smith stated, "Okay, okay, please don't do that to my son." At that moment, Ms. Smith decided she would continue to trust GOD. Therefore, she surrendered to the injustice she and her thirteen-year-old child were being subjected to by the hands of WMATA police.

### 6. Abuse and Assault on a Disabled Minor

Despite Officer Artis and Officer Crawford already having possession of N.I.V.'s left and right arms, Officer Artis can be heard on her Axon body camera repeatedly shouting, "Give me your arm!"—irrationally implying that N.I.V. was resisting arrest. More importantly, N.I.V. was suffering from excruciating eye pain due to Officer Artis's wrongful deployment of OC spray, and the minor could not see. Officer Artis is also seen on her body camera attempting to break the minor's arm by using the train chair.

Afterwards, Officer N. Crawford physically roughed up N.I.V. and placed him in handcuffs, exacerbating the minor's trauma. Instead of verbally instructing N.I.V. to stand up, Officer N. Crawford nearly broke his arms, pulled his jacket over his head, and dragged him off the train by his handcuffs. Simultaneously, Officer Artis grabbed the minor by his jacket and briefly pulled him in the opposite direction from which Officer Crawford was dragging him.

### 7. Sexual Assault

Officer N. Crawford can be seen on Officer Artis' Axon body camera footage wedging his foot between N.I.V.'s legs, onto his private parts. The disabled child, N.I.V., was not able to see nor was he attempting to flee. Officer C. Anguisaca then humiliated Ms. Smith by yelling at her to sit on the filthy ground. At the same time, Officer Artis shouted at Ms. Smith to stand up. Despite the disrespect, Ms. Smith adhered

to both officers' demands, wondering if she was being treated that way due to her spiritual/religious fringes on her clothing.

### 8. Wrongful Arrest of a Minor

Officer N. Crawford took Minor Child away in handcuffs. Ms. Smith asked the officers, "Where's the officer taking her son, and why is her son being taken a separate way?" The minor plaintiff was then placed into the back of a police vehicle awaiting medics who later arrived with disregard, and instead congregated with police. One of the officers on the scene had to remind medics that they were there for the minor child who had been exposed to O.C.

### 9. Kidnapping of a Minor

N.I.V., a minor, was unlawfully separated from his mother and detained by the officers, in violation of his Fourteenth Amendment rights. The detention of the minor constitutes kidnapping under 18 U.S.C. § 1201. Lieutenant L. White and Sergeant W. Tabb transported N.I.V. to the police station, where he was coerced and intimidated while still handcuffed. The officers later removed the handcuffs from N.I.V. while he was sleeping.

### 10. Unlawful Seizure of Persons

Upon exiting the station, Ms. Smith witnessed Aryan Ingram standing off to the side. Ms. Smith then asked Ms. Ingram, "Why didn't you tell them that you hit me?" Ms. Ingram replied, "I never pressed charges on you!" Because the WMATA police officers were not eyewitnesses to the event, Ms. Smith then inquired as to why she

was in handcuffs. Ms. Smith began to intuitively assess that perhaps her preaching on WMATA's "public" platform was the real underlying reason for her arrest.

### 11. Inadequate Investigation and Violation of Policy

Ms. Smith looked directly at Officer T. Artis and asked, "Why are y'all doing this? I didn't do nothing." Officer T. Artis placed Ms. Smith into the WMATA police vehicle and replied, "Hold on and let us investigate (AXON BODY 3 X60AC4683 18:07:42)!" This investigation should have been conducted prior to officers arresting the Plaintiffs. The police actions were not in accordance with WMATA's policy, as documented in General Order, Metro Transit Police, Subject: Arrest Policy, Number 601, IV, b.1., effective since 06/01/01.  Officers operated outside the scope of duty and breached their capacity.

### 12. Violation of Rights and Unwarranted Request for Password
Ms. Smith began ranting and praising God, saying, "Y'all came, pepper-sprayed my baby, and nearly broke my arms for no reason!" Shortly after, Lieutenant L. White approached Ms. Smith at the police vehicle's window and requested Ms. Smith's password to unlock her phone and view the incident on video.  However, the lieutenant had not established probable cause, and officers lacked direct evidence of any criminal conduct. Additionally, Ms. Ingram, the assumed victim, did not wish to press charges.

### 13. Refusal to Disclose Password

Ms. Smith did not trust disclosing her password. She had come to terms with the fact that she was about to be thrown into prison for no reason. Ms. Smith was concerned that crucial evidence might be deleted and, therefore, refused to give Lieutenant L. White her password. She and her child had already suffered multiple damages at the hands of WMATA officers. Plaintiff Tanisha Smith's trust had been exhausted.

### 14. Police Officers Fabricated Evidence

Lieutenant L. White walked away. Moments later, Sergeant G. Rich walked by the police vehicle's window and shouted to Ms. Ingram, "We'll tell you what to write." Even though WMATA police officers were not eyewitnesses to the incident.

### 15. Ms. Ingram's Statement

Ms. Ingram can be heard numerous times telling Officer K. Anderson that she did not wish to press charges. Said fact is verified from AXON BODY 3 X60AB117Z, time-stamped 18:07:11 throughout.

### 16. Coercion and Fabrication of False Information

Aryan Ingram is later seen sitting in the patrol vehicle, jotting down what Sergeant G. Rich coerced her to write. WMATA Metro Transit police officer C. Anguisaca then documented the false information and willfully signed a fraudulent Probable

Cause Statement, which contradicted solid video evidence from Plaintiff's cellphone video.

### 17. Unlawful Search, Detention, and Seizure of Property

Officer K. Anderson approached the police vehicle to unlawfully search and seize Ms. Smith's property (AXON BODY 3X60AC4683 18:15:39) under Lieutenant Louie White's order. At that time, Ms. Smith asked Officer K. Anderson why she was being arrested. Officer K. Anderson replied, "That's not my call to make." Shortly after, Ms. Smith was searched, and all her property was seized.

### 18. Injuries and Unlawful Detention

Ms. was then taken to the hospital to be seen and treated for multiple injuries caused by WMATA's police officers, including but not limited to bruises on her wrists from the handcuffs and pain in both shoulders. Plaintiff Smith was subsequently taken to jail, fingerprinted, and processed. Approximately twenty-four (24) hours later, she was finally informed of the charges against her, by the commissioner.

# VI. STATEMENT OF CLAIM

## Count 1: Failure to Investigate, 42 U.S.C. § 1983

(Violation of Fourteenth Amendment, Deprivation of Rights)

**Duty:**

Under the Fourth and Fourteenth Amendments, law enforcement officers have a constitutional duty to properly investigate and consider exonerating evidence that may prove an individual's innocence. Specifically, officers are required to thoroughly review evidence that could exonerate a person, as it is essential to protect the due process rights of individuals facing criminal charges or potential harm from police actions.

**Breach:**

In this case, the Plaintiffs offered to provided video footage of the incident, which clearly showed that the Plaintiffs were the victims of an unprovoked assault by Defendant Aryana Ingram. Despite Plaintiffs' explicit willingness to present the footage to the officers, WMATA Officers C. Anguisaca and N. Crawford ignored this evidence and failed to conduct a meaningful investigation into the event.

The officers also failed to ask the Plaintiffs any questions regarding the incident, further demonstrating their disregard for Plaintiffs Due Process Rights.

Said failure to investigate and review exonerating evidence constitutes a breach of the officer's duty to investigate thoroughly before making arrests or detaining individuals.

*Gomez v. City of Chicago, 810 F.3d 1029 (7th Cir. 2016),* The Seventh Circuit Court of Appeals ruled in favor of Gomez, finding that the police officers' actions violated his constitutional rights. The Court stated that police officers have a duty to investigate evidence that could exonerate a person. Ignoring such evidence deprives the individual of due process rights under the Fourteenth Amendment. The Court emphasized that failure to investigate exonerating evidence may lead to the wrongful detention and/or arrest of an individual, which can cause substantial harm and violate the individual's constitutional rights.

*Rogers v. City of Little Rock, 152 F.3d 790 (8th Cir. 1998),* The 8th Circuit Court of Appeals ruled in favor of the plaintiff, emphasizing that police officers have a duty to investigate claims and evidence presented by individuals, especially when such evidence can potentially exonerate them. In this case, the officers failed to conduct a meaningful investigation, leading to the violation of the plaintiff's Fourth Amendment rights (unlawful arrest and excessive force).The established that when police officers fail to review exonerating evidence, such as video footage, it is a violations of due process rights and unlawful detention.

**Causation:**

As a direct result of the officers' failure to review the exonerating video footage, the Plaintiffs were wrongfully detained and suffered harm, including a torn ligament, painful burning of minor child's eyes, false arrest, and emotional distress.

Had the officers properly reviewed the footage, they would have seen that the Plaintiffs were the victims and that the altercation was instigated by Ms. Ingram.

**Damages:**

The Plaintiffs suffered physical and emotional distress due to their unlawful detention and arrest. As a result of the officers' failure to investigate the video footage, the Plaintiffs were subjected to a prolonged and unjustified detention, resulting in substantial harm, including a torn ligament, painful burning of disabled minor child N.I.V face and eyes, anxiety, emotional distress, and unwarranted exposure to police authority. Plaintiffs demands compensatory damages, punitive damages, and revocation of the officers' bonds pending prosecution.

**Count 2: False Arrest,   42 U.S.C. § 1983**

( Fourth Amendment Violation, Deprivation of Rights)

**Duty:**

Officers are required to act within their legal capacity and ensure that arrests are only made when there is probable cause.  Officers employed by WMATA have a duty to ensure that arrests are conducted only when there is probable cause, after a thorough investigation.  WMATA General Order, Metro Transit Police Subject: Arrest Policy 601 IV., A., 2 and IV., B., 1.

**Breach:**

The WMATA officers unlawfully arrested and detained the Plaintiffs without an investigation or probable cause. Officers did NOT have sufficient legal justification, in violation of the Fourth Amendment. WMATA Officers acted outside the scope of their duties and breached their capacity. While operating under the color of law.

*Florida v. J.L. U.S., 529 U.S. 266 (2000) A United States Supreme Court case in which the Court determined that **police officers may not legally stop** and frisk **someone based solely on** an anonymous tip that describes a person's location and appearance.*

*__Dunaway v. New York (1979)__ , The Supreme Court ruled that any **detention that closely resembles an arrest requires probable cause**. Investigatory purposes alone do not justify the type of custodial detention that occurred in this case. This decision reaffirmed and strengthened the constitutional safeguards against arbitrary police actions.*

**Causation**:
The unlawful detention and arrest caused Plaintiffs to suffer personal harm, including deprivation of liberty, physical injuries and emotional distress.

**Damages:**
As a result of this breach, loss of freedom, humiliation, and emotional distress. Plaintiffs demand compensatory damages, punitive damages, and revocation of the officers' bonds pending prosecution.

## Count 3: Excessive Force, 42 U.S.C. § 1983

(Fourteenth  Amendment Violation of Due Process)

**Duty:**

Officers have a duty to use reasonable force when interacting with individuals under their custody, as outlined by the Fourth Amendment.

**Breach:**

The WMATA officers used excessive force when they physically restrained Ms. Smith, and violently twisted her arms, Ms. Smith was NOT resisting because, probable cause was NOT established through an investigation. Officers' used OC spray on disabled minor N.I.V., causing him unnecessary harm.

*Crawford v. City of Tampa, 2010 WL 3490552 (M.D. Fla. Sept. 3, 2010),*

*The court emphasized that the reasonableness of force is judged by the totality of the circumstances. This includes factors such as the severity of the offense. Whether the suspect poses an immediate threat, and whether the suspect is actively resisting arrest or attempting to flee. In this case, the court determined that the allegations raised by Crawford were sufficient to allow the claim to proceed. The reasonableness of the force used was a factual question that would need to be resolved at trial, depending on the facts surrounding the incident. The court also ruled that the police officers were not entitled to qualified immunity. Qualified immunity protects government officials from lawsuits unless they violate clearly established law that a reasonable officer would have known. The court found that*

the right to be free from excessive force during an arrest was clearly established at the time of the incident. As such, a reasonable officer should have known that using excessive force against Crawford, especially if he was not posing a serious threat, could violate his constitutional rights. Since the court found that Crawford had sufficiently alleged a violation of clearly established law, the officers were not shielded by qualified immunity.

***Graham v. Connor***, *490 U.S. 386 (1989),  The Court  established that reasonableness should be judged from the perspective of a reasonable officer on the scene, without the benefit of hindsight. This means that the reasonableness of the officer's actions must be assessed based on the circumstances at the time of the arrest, including: The severity of the crime at issue. Whether the suspect posed an immediate threat to the safety of the officers or others. Whether the suspect was actively resisting arrest or attempting to evade arrest by flight.*

***Vaughn v. City of Lebanon***, *18 F.4th 518 (6th Cir. 2021),  The court determined that officers used excessive force by using handcuffs inappropriately on a non-threatening individual. The Court upheld that Intermediate force, such as Tasers, is not justified against passive resistance under the Fourth Amendment. Qualified immunity does not shield officers who use excessive force in situations where the law clearly establishes that such actions are unconstitutional. Law enforcement must proportionally respond to resistance or noncompliance, ensuring their actions align with constitutional protections against unreasonable seizures.*

**N.I.V.** was pepper sprayed and dragged by handcuffs and then sexually assaulted by Officer N. Crawford;  Ms. Smith suffers from a torn ligament as a result of being forcefully restrained.  Although she had NOT committed a crime, posed a legitimate threat, nor was she attempting  to flee.

**Causation:**

The use of excessive force directly caused physical injury to Ms. Smith, including shoulder pain from a torn ligament and emotional distress to both Plaintiffs, Especially, minor child, N.I.V.  who was subjected to being peppered spayed and Dragged by his handcuffs.

**Damages:**

Plaintiffs currently suffer from physical as well as (torn shoulder ligament, vision impairment from OC spray) emotional distress due to the excessive use of force. Plaintiffs demands compensatory damages, punitive damages, and revocation of the officers' bonds pending prosecution.


**Count 4 : Assault and Abuse of a Minor, 42 U.S.C. § 1983**

(Fourteenth Amendment Violation of  Due Process)

**Duty:**

The officers had a duty to refrain from using physical force unless it was necessary and reasonable under the circumstances.

**Breach:**

The officers physically assaulted and Abused Ms. Smith's son N.I.V., by using excessive force by applying OC spray, dragging him by handcuffs and attempting to break his Arm . *C.A. v. Young, 773 F.3d 455 (4th Cir. 2014),*

*The Fourth Circuit held that the Fourth Amendment applies to police use of force in situations involving minors. The Fourth Amendment protects individuals, including children, from unreasonable seizures, which includes the use of force by police officers. The court emphasized that the reasonableness of police use of force is judged under the totality of the circumstances, with an analysis of factors such as the severity of the alleged offense, the immediate threat posed by the person, whether the suspect is actively resisting arrest, and the potential danger posed by the situation.*

**Causation:**

The officers' actions directly inflicted physical and emotional trauma to N.I.V.

**Damages:**

As a result of the officers' actions, Plaintiffs sustained bodily injuries, including severe physical and emotional distress. Plaintiffs demands compensatory damages, punitive damages, and revocation of the officers' bonds pending prosecution.

## Count 5:  Unlawful Detention of a Disabled Minor,  42 U.S.C. § 1983

(Fourteenth Amendment Violation of Due Process)

**Duty:**

WMATA officers have a duty to respect the rights of minors and to refrain from unlawfully detaining them without sufficient legal justification.

**Breach:**

Officers unlawfully detained N.I.V. by separating him from his mother and transporting him in handcuffs, without proper justification or legal grounds. *Doe v. Abbott, 573 F.3d 871 (5th Cir. 2009) - The unlawful detention of a child by state actors violates both the child's constitutional rights and the parents' rights.*

The unlawful separation of N.I.V. from his mother by officers without any legitimate reason violated both his constitutional rights and Ms. Smith's rights as a parent to control her child's custody. Wrongful Arrest of a Disabled Minor.

**Causation:**

This unlawful detention caused significant emotional harm to N.I.V. and physical discomfort from the handcuffs, as well as distress caused by the officers' treatment of his mother.

**Damages:**

N.I.V. suffered emotional distress, pain, and humiliation due to the unlawful detention and separation from his mother. Plaintiffs demands compensatory

damages, punitive damages, and revocation of the officers' bonds pending prosecution.

## Count 6: Sexual Assault, 42 U.S.C. § 1983

(Fourteenth Amendment Violation of Bodily Integrity)

### Duty:

Officer Crawford had a duty to respect N.I.V.'s rights during the unlawful detention. This means no unreasonable force, searches, or sexual misconduct.

### Breach:

Officer Crawford breached his duty by using inappropriate conduct during the arrest of minor child N.I.V. The officer caused him discomfort and humiliation. Officer N. Crawford committed sexual assault. Officer Crawford's act of wedging his foot between N.I.V.'s legs, causing sexual discomfort and humiliation, constitutes sexual assault and violates of his constitutional rights under the Fourth Amendment. *Rivas v. City of Passaic, 365 F.3d 181 (3d Cir. 2004) -Police officers' sexual misconduct toward detainees violates detainees' constitutional rights and can constitute a claim for sexual assault.*

*Brower v. County of Inyo, 489 U.S. 593 (1989) - Any inappropriate or sexual conduct by law enforcement officers during an arrest constitutes a constitutional violation under the Fourth Amendment.*

**Causation**:

Crawford's actions caused N.I.V. both emotional and physical harm. Due to his misconduct.

**Damages:**

As a result of the officer's actions, N.I.V. went through physical pain and emotional distress. Plaintiffs demands compensatory damages, punitive damages, and revocation of the officers' bonds pending prosecution.

## Count 7: Fabrication of Evidence and Coercion, 42 U.S.C. § 1983

(Fourteenth Amendment  Violation)

**Duty:**

Officers have a duty to conduct investigations and legal proceedings in good faith, without coercion or fabrication of evidence.

**Breach:**

Officers coerced Ms. Ingram into providing a fabricated statement, resulting in false charges and wrongful detention against Plaintiffs. ***Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 2001)*** *Devereaux's central claim was that police officers fabricated evidence, such as false reports, which led to a wrongful conviction, thereby violating his due process rights under the Fourteenth Amendment.   The Ninth Circuit held that deliberate fabrication of evidence by law enforcement officers indeed violates an individual's due process rights and forms the basis for a § 1983 claim. The court ruled that the right to be free from fabricated evidence was clearly*

*established, and it was well recognized that police officers who fabricate evidence is held liable under §1983. The court noted that false or fabricated evidence used to convict someone is fundamentally unfair and violates the core principles of due process.*

**Causation:**

The fabricated statement and false evidence led to wrongful legal actions against Plaintiffs, including unlawful detention.

**Damages:**

Plaintiffs suffered harm to their reputation, emotional distress, and legal consequences due to the fabricated evidence. Plaintiffs demands compensatory damages, punitive damages, and revocation of the officers' bonds pending prosecution.

## Count 8: Wrongful Detention  42 U.S.C § 1983

(Fourth Amendment violation of Due Process)

**Duty:**

Officers are required to act within their legal capacity and ensure that arrests are only made when there is probable cause.

**Breach:**

The officers detained Plaintiffs without probable cause or legal justification.
In **Florida v. Royer**, 460 U.S. 491 (1983) The Supreme Court ruled that the officers violated Royer's Fourth Amendment rights. The detention and the search were not supported by probable cause or reasonable suspicion, and the officers' actions were unconstitutional.

**Causation:**

This unlawful detention caused loss of liberty and harm to Plaintiffs' personal and constitutional rights.

**Damages:**

Plaintiffs suffered emotional distress, humiliation, and deprivation of liberty due to the false arrest. Plaintiffs request compensatory damages, punitive damages, and prosecution of the officers involved.

**Count 9: Kidnapping of a Minor, 42 U.S.C § 1983**

(Violation of 18 U.S.C. § 1201)

**Duty:**

Officers have a duty to not unlawfully separate children from their guardians or detain them in a manner contrary to law.

**Breach:**

Officers unlawfully detained N.I.V. and removed him from the train in handcuffs, and transported him without proper legal justification, violating the federal kidnapping statute.  In *Troxel v. Granville, 530 U.S. 57 (2000) - Parents have a fundamental right to make decisions concerning the care, custody, and control of their children. Any unlawful separation of a minor from their parent violates this right  (18 U.S. Code 1201).*

**Causation:**

N.I.V. suffered significant emotional and physical harm as a result of his unlawful detention and separation from his mother.

**Damages:** N.I.V. suffered physical pain from the handcuffs and emotional distress from the separation and unlawful detention. Plaintiffs demands compensatory damages, punitive damages, and revocation of the officers' bonds pending prosecution.

## VII. HEIGHTENED PLEADING REQUIREMENTS

In accordance with FRCP Rule 9, Plaintiffs have sufficiently pled failure to investigate, false Arrest, excessive force. Assault / Abuse to a disabled Minor child , wrongful arrest. Sexual assault on a minor, fabrication of evidence / Fraud, wrongful Detention and Kidnapping, involving wrongful conduct under heightened pleading standards. *Ashcroft v. Iqbal, 556 U.S. 662 (2009): The U.S. Supreme Court set forth the plausibility standard for pleading, requiring that assertions in a complaint must be plausible, not just possible. This is particularly relevant in § 1983 cases where the plaintiff is claiming misconduct by government officials. The Court held that plaintiffs must include sufficient factual allegations to demonstrate a plausible entitlement to relief.*

IX. EXHIBITS Plaintiffs submit the following exhibits in support of their claims:

· **Exhibit A**: Video,  Incident at Shady Grove and Largo , Video from Tanisha Smith's cell phone showing Ingram attacking her.

· **Exhibit B:** Video, *Ms. Smith* enforcing the ultimatum giving to Ingram.

· **Exhibit C:** Video , Proof Ms. Smith's  injury was NOT a result of the  Fight.

· **Exhibit D:** Video footage showing  failure to investigate and unlawful seizure.

   **Exhibit E:**  Video,  False Arrest

· **Exhibit F:**  Video,  Excessive force assault and Battery N.I.V. being pepper-

· **Exhibit G:** Video, Assault / Abuse  and wrongful detention of a minor.

• **Exhibit H:** Axon Video Sexual Assault against a minor.

• **Exhibit I:**  Axon Video Coercion, and  Fabrication of Evidence.

• **Exhibit J:**  Officer N. Crawford admits Ms. Smith was Arrested based on the color of her clothing.

• **Exhibit K:** Video of Kidnapping

• **Exhibit L:** Fraudulent Probable cause statement.

• **Exhibit M:** March 15h 2024  Maryland Emergency Room document.

• **Exhibit N:**  March 18th, 2024, Maryland Emergency Room document.

• **Exhibit O:** Primary Doctor Medical records

• **Exhibit P:** MRI for Ms. Smith

## X. DEMAND FOR RELIEF

Plaintiffs demands Compensatory damages in the amount of $3.33Milion Dollars, for the physical and emotional harm caused by the unlawful arrest, detention, and violation of constitutional rights. Plaintiffs also demand Punitive damages in the amount of $36.9Milion Dollars, to deter the officers' misconduct and prevent future violations. Plaintiffs demand that all officers involved be held accountable and prosecuted for their unlawful actions, including the failure to investigate exonerating evidence, false Arrest, Excessive force, Assault and Abuse, wrongful arrest of a disabled minor, sexual assault on a minor, fabricating evidence (using coercion), wrongful detention which contributed to the kidnapping of both plaintiff's . Multiple counts of the Plaintiffs' rights were violated by the WMATA Police department. Grant injunctive relief to prevent future misconduct by Defendants. Refer the actions of the Defendants for criminal prosecution, and revocation of the officers' bonds.

Grant such other and further relief as the Court deems just and proper. For their unlawful actions. **WHEREFORE**, Plaintiffs respectfully demands that the Court: Award the total amount of $39,420,000 for the willful and malicious actions of Defendants. The WMATA Police Department caused Plaintiffs to suffer physically and emotionally. Issue declaratory relief stating that Defendants' actions violated Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments.

**XI. JURY DEMAND** Plaintiffs demand a jury trial for all issues triable by a jury

**X1I. ADOPTION BY REFERENCE**

Plaintiffs hereby adopt and incorporate by reference all prior paragraphs and statements of fact, exhibits as fully set forth herein.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. A. For Parties Without an Attorney I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep my current address on file updated with the Clerk's Office may result in the dismissal of my case.

X _____                    January 9th, 2025

Respectfully submitted, Tanisha Smith and N,I.V.

By and through Tanisha Smith, Next Friend

23144 Cinco Ranch Blvd, Ste B #1017

Katy, TX 77494

Email: Tanishayhshrl@gmail.com, Plaintiff(s).