# Table of Contents

MOTION FOR DISMISSAL AND/OR FOR SUMMARY JUDGMENT BY THE SEVEN PERSONAL CAPACITY DEFENDANTS (ARTIS, ANGUISACA, CRAWFORD-KINNEY, TABB, RICH, WHITE AND ANDERSON) ............................................................ 1

I.    OFFICIAL CAPACITY CLAIMS AGAINST ALL SEVEN DEFENDANTS MUST BE DISMISSED AS A MATTER OF LAW UNDER RULE 12(b)(1) and 12(b)(2)........... 2

II.   EXCEPTING COUNT SEVEN, PLAINTIFFS' CONSTITUTIONAL TORTS ALL ALLEGE 4TH AMENDMENT VIOLATIONS. ...................................................... 4

III.   COUNT NINE MUST BE DISMISSED AS A MATTER OF LAW  . ......................5

IV.   DEFENDANTS MUST BE GRANTED DISMISSAL AND/OR SUMMARY JUDGMENT ON PLAINTIFF'S COUNT SEVEN (FABRICATION OF EVIDENCE) ............................................................................................... 5

V.    STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE ................ 7

VI.   STANDARD OF REVIEW................................................................... 7

VII.  DEFENDANTS RICH, WHITE, TABB AND ANDERSON, IN THEIR PERSONAL CAPACITIES, ARE ENTITLED TO DISMISSAL AND/OR SUMMARY JUDGMENT BECAUSE NONE PARTICIPATED IN ARRESTING OR DETAINING PLANTIFFS  OR IN USING FORCE AGAINST THEM. ............. 8

VIII. DEFENDANTS ANGUISCA, CRAWFORD AND ARTIS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS BASED ON THEIR QUALIFIED IMMUNITY ..........................................................................10

A.   Plaintiff's Claims of Unlawful Seizure Under the Fourth Amendment. ..............13

B.   Standard Of Probable Cause ...........................................................14

C.   The Uncontested Evidence Establishes That Defendants Had Probable Cause To Arrest Plaintiff As A Matter Of Law...............................................................15

D.   There Is No Clearly Established Law To Be Free From Arrest Under These Facts ..................................................................................................19

IX.   DEFENDANT'S OBJECTIVELY REASONABLE USE OF FORCE REQUIRES DISMISSAL OF PLAINTIFF'S CLAIM OF EXCESSIVE FORCE UNDER § 1983. ..................................................................................................19

A.   The Arresting Officers' Use Of Force Was Reasonable .....................................21

X.    CONCLUSION ..................................................................................26

i

## Table of Authorities

*Ali v. Trump*, 959 F.3d 364 (D.C. Cir. 2020) .................................................................. 5

*Anderson v. Creighton*, 483 U.S. 635 (1987) ....................................................... 11, 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)........................................... 8

*Armbruster v. Frost*, 962 F.Supp.2d 105 (D.D.C., 2013)........................................20

*Ashcroft v. al–Kidd*, 563 U.S.731 (2011) ............................................................ 10, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................ 3

*Ball v. United States*, 803 A.2d 971(D.C. 2002) ...................................................14

*Beebe v. WMATA*, 129 F.3d 1283 (D.C. Cir. 1997)................................................. 3

*Bell-Atlantic v. Twombly*, 550 U.S. 544 (2007) ................................................... 6

*Boling v. United States Parole Commission*, 290 F.Supp.3d 37 (D.D.C. 201) ........................3, 5

*Brinegar v. U.S.*, 338 U.S. 160 (1949) ..................................................................14

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ....................................................... 11, 19

*Burkhart v. WMATA*, 112 F.3d 1207(D.C. Cir. 1997)........................................... 3

*Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001) ..............................10

*Campbell v. District of Columbia*, 245 F.Supp. 3d 78 (D.D.C. 2017) ....................11

*Carroll v. United States*, 267 U.S. 132 (1925).....................................................14

*Carter v. Jess*, 179 F.Supp.2d 534 (D. Md. 2001) ................................................ 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..................................................... 7

*Corrigan v. Glover*, 254 F.Supp.3d 184 (D.D.C 2017) .........................................12

*Cover v. State*, 466 A.2d 1276 (Md.1983) ............................................................18

*Cromartie v. District of Columbia*, 479 F. App'x 355 (D.C. Cir. 2012)..............................21,22

*Daniels v. Williams*, 474 U.S. 327 (1986)............................................................ 5

*Dant v. WMATA*, 829 F.2d 69 (D.C. Cir. 1987)...................................................... 3

*District of Columbia v. Wesby*, 588 U. S. 48 (2018) ......................................... 14, 19

*Dormu v. D.C.*, 795 F Supp. 2d 7 (D.D.C. 2011) ..................................................20

*Estate of Phillips v. District of Columbia*, 455 F.3d 397 (D.C. Cir. 2026) ................. 5

*Evans-Reid v. District of Columbia*, 930 A.2d 930 (D.C.2007)...............................16

*Garay v. Liriano*, 943 F. Supp. 2d 1 (D.D.C. 2013) ..............................................20

*Garcia v. Montgomery County, Maryland*, 145 F. Supp.3d 492 (D. Md. 2015) ........................16

*Gerstein v. Pugh*, 420 U.S. 103 (1974)................................................................ 4

*Goolsby v. District of Columbia*, 317 F.Supp.3d 582 (D.D.C 2018) ......................22

*Graham v. Connor*. 490, U.S. 386 (1989)............................................... 4, 11, 19, 20

*Greene v. Dalton*, 164 F.3d 671(D.C. Cir. 1999)................................................ 8

*Hafer v. Melo,* 502 U.S. 21 (1991) ....................................................................... 2

*Hall v. District of Columbia*, 308 F. Supp. 3d 269, 274 (D.D.C. 2018) ..................................... 5

*Halsey v. Pfeiffer*, 750 F.3d 273 (3rd Cir. 2014) ....................................................................... 5

*Harding v. Gray*, 9 F.3d 150 (D.C. Cir. 1993) ......................................................................... 8

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982).............................................................................10

*Henry v Cty of Flint, Mich.*, 814 F. App'x 973 (6th Cir. 2020) ...............................................24

*Illinois v. Gates*, 462 U.S. 213 (1983)....................................................................................14

*Jefferies v. District of Columbia*, 917 F.Supp.2d 10 (D.D.C., 2013) ......................................... 9

*Johnson v. District of Columbia*, 528 F.3d 969 (D.C.Cir.2008)...............................................13

*Johnson v. Glick*, 481 F.2d 1028 (2nd Cir. 1973) ...................................................................11

*Johnson v. U.S.*, 559 U.S. 133 (2010) .....................................................................................17

*Lamb v. State*, 613 A.2d 402 (Md. App. 1992) .......................................................................16

*Laningham v. U.S. Navy*, 813 F.2d 1236 (D.C. Cir. 1987)......................................................... 7

*Lash v. Lemke*, 786 F.3d. 1 (D.C. Cir 2015) ...........................................................................23

*Love v. State*, 294 A.3d 206 (Md. App. 2023) ........................................................................16

*Manuel v. City of Joliet, Ill.*, 137 580 U.S. 357 (U.S., 2017) .................................................... 4

*Martin v. Malhoyt*, 830 F.2d 237 (D.C. Cir. 1987) .................................................................21

*Oberwetter v. Hilliard*, 639 F.3d 545 (D.C. Cir. 2011)...........................................................22

P*eacock v. Mayor and City Council of Balt.*, 199 F.Supp.2d 306 (D. Md. 2002) ...................... 4

*Pearson v. Callahan*, 555 U.S. 223 (2009) .............................................................................10

*Rawlings v. District of Columbia*, 820 F.Supp.2d 92 (D.D.C. 2011) .......................................16

*Reichle v. Howards*, 566 U.S. 658 (2012)...............................................................................10

*Riddle v. Riepe*, 866 F.3d 943(8th Cir. 2017)........................................................................... 6

*Robinson v. District of Columbia*, 2006 WL 2714913 ............................................................21

*Rogala v. District of Columbia,* 161 F.3d 44 (D.C. Cir. 1998) ...........................................11,20

*Saucier v. Katz*, 533 U.S 194 (2001)................................................................................ 11, 18

*Scott v. District of Columbia*, 101 F.3d, 748 (D.C Cir. 1996)..................................................21

*Scott v. Harris*, 550 U.S. 372 (2007)...................................................................................... 8

*Smith v. U.S.*, 306 A.3d 67 (D.C.2023)...................................................................................16

*Stevenson v. District of Columbia*, 639 F.Supp.3d 117 (D.D.C. 2022) ...............................7, 25

*Tennessee v. Garner*, 471 U.S. 1 (1985) .................................................................................11

*Terry v. Ohio*, 392 U.S. 1 (1968) ............................................................................................24

*Texas v. Brown*, 460 U.S. 730 (1983).....................................................................................14

*U.S. v. Coleman*, 158 F.3d 199 (4th Cir. 1998) ......................................................................16

*U.S. v. Redrick*, 841 F.3d 478  (D.C. Cir. 2016)......................................................................16

*Virginia v. Moore*, 553 U.S. 164 (2006) ...........................................................................15, 17

*Wardlaw v Pickett*, 1 F.3d 1297 (D.C. Cir. 1993)...................................................................20

*Wasserman v. Rodacker*, 557 F.3d 635 (D.C. Cir. 2009) ........................................................22

*Wesby v. D.C.*, 583 U.S. 48 (2018) .........................................................................................19

*White v. Pauly* 500 U.S.73 (2017) ...................................................................................10

*Wilkins v. District of Columbia, et al.*, 2020 WL 581691, No. 17-884 (CKK) (9/30/20202) ......24

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TANISHA SMITH**, *et al.*, | |
| | |
| **Plaintiffs,** | |
| | |
| **v.** | |
| | |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY POLICE DEPARTMENT** *et al.*, | **Civil Action No. 1:25-cv-00232-RC** |
| | |
| **Defendants.** | |

**MOTION FOR DISMISSAL AND/OR FOR SUMMARY JUDGMENT BY THE SEVEN PERSONAL CAPACITY DEFENDANTS (ARTIS, ANGUISACA, CRAWFORD-KINNEY, TABB, RICH, WHITE AND ANDERSON)**

All seven personal capacity Defendants -- Artis, Anguisaca, Crawford-Kinney ('Crawford'), Anderson, Rich, White, and Tabb, ("personal capacity Defendants" or "Defendants") -- by and through counsel, hereby submit this Memorandum of Law in Support of their Motion For Dismissal and Summary Judgment on all claims asserted against them by Plaintiff.

On January 23. 2025, Plaintiffs filed a nine-count complaint in the U.S. District Court of the District of Columbia against these seven MTPD officers in their personal capacities as well as their official capacity. Complaint, ECF #1. Plaintiffs' nine-count Complaint solely asserts constitutional torts under 42 U.S.C. § 1983. *Id*. Defendants, named in their personal capacities, are all police officers employed by Washington Metropolitan Area Transit Authority's ("WMATA's") Metro Transit Police Department ("MTPD"). Ex. 1, Statement of Material Facts

Not in Genuine Dispute ("SMF") ¶ 1. Plaintiffs are Tanisha Smith and her minor son, N.I.V. Ms. Smith brings claims on behalf of her son and herself against the seven officers. Complaint, ECF # 1. All of Plaintiffs' claims arise out a report of a fight on a Metrorail train car at WMATA's Largo Metrorail station on March 15, 2024, that resulted in Plaintiff Smith's arrest and her son's detention. *Id.; see also* Ex., 1, SMF ¶¶ 17-36. Defendants Anguisaca and Crawford arrested Ms. Smith for assault, related to that fight. *Id*. Officers Artis and Crawford detained N.I.V., Plaintiff's son, who physically intervened in his mother's arrest, resulting in Officer Artis using a burst on pepper spray (O.C. spray) on him to gain compliance and stop his interference. Ex. 1, SMF ¶¶ 31-36. The seven Defendants now move for dismissal and/or summary judgment on all nine counts alleged in Plaintiffs' Complaint.

### I.    OFFICIAL CAPACITY CLAIMS AGAINST ALL SEVEN DEFENDANTS MUST BE DISMISSED AS A MATTER OF LAW UNDER RULE 12(b)(1) and 12(b)(2).

Plaintiff's Complaint alleges that she is suing these seven Defendants in their official as well as their personal capacity. All claims against these Defendants in their official capacities must be dismissed as a matter of law under Rule 12(b)(1), because an official capacity suit in simply another way of alleging a claim against WMATA, and WMATA is immune for all claims arising out of its governmental functions.

The Supreme Court has held that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (internal quotation marks omitted). Consequently, when an official is named as a defendant based upon the position held, "the real party in interest ... is the governmental entity and not the named official." *Id*. Plaintiffs' claims against Officer Roberts in his official capacity, therefore, must be analyzed as if WMATA were the party-defendant.

2

This Circuit has long recognized WMATA's immunity from all claims arising from its police functions, which are "quintessential governmental functions." *Dant v. WMATA*, 829 F.2d 69, 74 (D.C. Cir. 1987); *see also Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997); *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997). This Court lacks subject matter jurisdiction over a official capacity suit brought against these seven MTPD police officers, because WMATA enjoys absolute immunity for its police function. *Id*. All of Plaintiff's claims herein, arising out of her arrest and her son's detention, pertain to police function, for which WMATA is immune. *Id*. Consequently, all official capacity claims must be dismissed pursuant to Rule 12(b)(1).

Additionally, "Section 1983 creates a private right of action against a "person" who is alleged to have violated the plaintiff's constitutional rights while acting "under color of ... any State or Territory or the District of Columbia." 42 U.S.C. § 1983. Section 1983 claims are "properly brought against the person in his or her individual capacity" *Boling v. United States Parole Commission*, 290 F.Supp.3d 37, 50 (D.D.C. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). All claims in this matter are brought under Section 1983. Complaint, ECF # 1.

Wherefore, for these reasons, all official capacity claims against these seven Defendants must be dismissed as a matter of law pursuant to Rule 12(b)(1) and Rule 12(b)6). Officers Artis, Anguisaca, Crawford, Rich, White, Tabb and Anderson submit the remainder of their arguments addressing Plaintiffs claim against them in their personal capacity.

3

## II.  EXCEPTING COUNT SEVEN, PLAINTIFFS' CONSTITUTIONAL TORTS ALL ALLEGE 4TH AMENDMENT VIOLATIONS.

Plaintiffs purport to assert due process claims, either separately or in conjunction with the Fourth Amendment in seven of the nine counts of her Complaint.   Due process violations are alleged in: (a) Count One, captioned, "Failure to Investigate; (b)  Count Three, captioned "Excessive Force;" (c) Count Four, captioned "Assault and Abuse of a Minor;' (d) Count Five, captioned "Unlawful Detention of a Minor;" (e) Count Six, captioned "Sexual Assault;" (f) Count Seven, captioned "Fabrication of Evidence and Coercion;" and,  (g) Count Eight, captioned "Wrongful Detention." *See* Complaint (ECF # 1) pp. 18- 36.

Plaintiffs cannot transform their Fourth Amendment claims of wrongful arrest and/or detention into due process claims. Plaintiffs "Fourth and Fourteenth Amendment rights with regard to [their] alleged unlawful arrest are co-extensive." P*eacock v. Mayor and City Council of Balt*., 199 F.Supp.2d 306, 310 (D. Md. 2002). "The constitutional rights asserted … in these §1983 claims must be sought ultimately in the [F]ourth [A]mendment … [f]or it is from the Fourth Amendment and its common-law antecedents' that the standards and procedures for arrest and detention have been derived."  *Gerstein v. Pugh*, 420 U.S. 103, 111 (1974).

Further, the Supreme Court has explained that when identifying which specific constitutional right is being infringed by the challenged use of force by a police officer, in most instances, the right will fall under the Fourth Amendment's prohibition against unreasonable seizures, or the Eighth Amendment's ban on cruel and unusual punishment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The ruling in *Graham v. Connor* made explicit that claims based on excessive force by police " – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" . . . should be analyzed under the Fourth Amendment and its "reasonableness standard, rather than under a substantive due process approach." *Id.* at 395. *See also Manuel v. City of Joliet, Ill*., 137

580 U.S. 357, 368–69 (U.S., 2017) (claims arising out of alleged wrongful arrests (pre-legal-process) or wrongful pretrial detentions (post-legal process) are governed by the Fourth Amendment).

Therefore, for these reasons, Plaintiffs' claims, excepting Count Seven's fabrication of evidence allegations, must be construed solely under the Fourth Amendment.

### III.    COUNT NINE MUST BE DISMISSED AS A MATTER OF LAW.

Plaintiff's Count Nine alleges that "officers unlawfully detained N.I.V. and removed him from the train in handcuffs, violating the federal kidnapping statute, 18 U.S.C.A. § 1201. Plaintiff is wrong. The federal kidnapping statute is a criminal statute and does not provide a private cause of action. *See Boling v. United States Parole Commission*, 290 F.Supp.3d at 46-47 (criminal statutes provide no basis for an individual to bring a private, civil action). Further, any claim of unlawful detention of N.I.V. is already alleged and duplicated in Counts Five and Eight. Wherefore, Defendants move that Count Nine be dismissed as a matter of law.

### IV.    DEFENDANTS MUST BE GRANTED DISMISSALAND/OR SUMMARY JUDGMENT ON PLAINTIFF'S COUNT SEVEN (FABRICATION OF EVIDENCE)

Courts in this jurisdiction have evaluated fabrication-of-evidence claims as matters of substantive due process arising under the Fifth Amendment. S*ee Hall v. District of Columbia*, 308 F. Supp. 3d 269, 274 (D.D.C. 2018). In order to establish a fabrication of evidence claims, "a plaintiff must show a state actor was deliberately indifferent to his constitutional rights such that the conduct shocks the conscience." *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2026). The standard of "shocking the conscience" is a very high bar. *Ali v. Trump*, 959 F.3d 364, 369 (D.C. Cir. 2020). A plaintiff cannot prevail in her claim under Section 1983 by proving negligent acts. *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Nor can a plaintiff

5

succeed by showing that allegedly fabricated testimony is simply wrong or disputed. *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3rd Cir. 2014).

Plaintiff does not even allege facts that meet these insufficient legal standards. Plaintiff fails to plead any facts sufficient under Fed. Rule Civ. P 8(a)(2); she relies on the type of assertions that the Supreme Court has deemed insufficient, i.e., "the-defendant-unlawfully-harmed-me" accusations. *See Bell-Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff states, as a basis for the fabrication, that "officers coerced Ms. I[..] into providing a fabricated statement, resulting in false charges and wrongful detention." Complaint, ECF # 1, Count 7, p. 38. She does not name which officer(s) "coerced" the victim, or how the coercion occurred,  or which statements were false, or how the alleged fabrications caused false charges. Plaintiff was sitting in a police cruiser at the time the officers interviewed A.I. Ex., 1, SMF ¶¶ 39-40. Plaintiff's evidence would have to come from BWC videos, which do not support her claims.

Significantly, she does not allege how the alleged false statements resulted in false charges against her. This failure is not surprising, because the officers, including Sgt. Rich, interacted with A.I. after Plaintiff's arrest, when Plaintiff was arrested and sitting in the police vehicle. Plaintiff was arrested before Sgt. Rich's interview with A.I., where he and 'officers" fabricated evidence in order to arrest her. It is axiomatic that actions occurring after Plaintiff's arrest cannot cause Plaintiff's arrest.

Moreover Sgt. Rich's interview of A.I. is captured on his BWC  *See* Rich BWC, Ex. 10, during which A.I. is head to say, voluntarily, and with no prompting from Sgt. Rich, how Plaintiff sat on her, preventing her from getting up and breathing. *See* Rich BWC, Ex. 10 at 18:07:20-22; 18:10:00 – 18:10: 28. Plaintiff has failed to allege facts, or offer any evidence, let alone met her burden "to provide  persuasive evidence supporting a conclusion that the

6

proponents of the evidence were aware that the information was incorrect, and …offered in bad faith." *Riddle v. Riepe*, 866 F.3d 943, 948 (8th Cir. 2017).

Wherefore, for these reasons, Plaintiffs' Count Seven must be dismissed as a matter of law under 12(b)(6) for failure to state a claim. Further, Defendants are entitled to qualified immunity for this claim because Plaintiff provides no evidence of a Fifth Amendment violation; and no evidence of clearly established law where a court has held similar facts to have established a claim of fabrication of evidence. *See Stevenson v. District of Columbia*, 639 F.Supp.3d 117, 131–32 (D.D.C., 2022) (qualified immunity applies where Plaintiff fails to identify clearly established law from the Supreme Court or Circuit Court on point.)

Wherefore, all three arresting Defendants, and Sgt. Rich, respectfully move for the dismissal of prejudice of Count Seven, or alternatively, of summary granted in their favor.

## V.   STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

*See* Defendant's Statement of Material Facts Not in Genuine Dispute ("SMF"), attached hereto as Exhibit 1 and incorporated herein.

## VI.   STANDARD OF REVIEW

Summary judgment is appropriate whenever the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. Once the moving party makes the initial showing that no issue exists as to any material fact, the burden shifts to the opposing party to demonstrate the existence of a material factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff, as the non-moving party, is required to provide evidence that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). In ruling upon a summary

judgment motion, all reasonable inferences that may be drawn from the facts in the record must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The inferences, however, must be reasonable, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing that creates a genuine issue of material fact. *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Mere conclusory allegations are insufficient to raise a genuine issue of material fact. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

The obligation of a court to view the facts in the light most favorable to the nonmoving party on motion for summary judgment is only applicable when, and if, there is a genuine dispute of facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007)(internal citations omitted)(emphasis added). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.

**VII.    DEFENDANTS RICH, WHITE, TABB AND ANDERSON, IN THEIR PERSONAL CAPACITIES, ARE ENTITLED TO DISMISSAL AND/OR SUMMARY JUDGMENT BECAUSE NONE PARTICIPATED IN ARRESTING OR DETAINING PLANTIFFS  OR IN USING FORCE AGAINST THEM.**

A review of  the 'Facts' section of the Complaint (*See* Complaint, ECF # 1 at p. 10-17) as well as the 'Statement of Claim,' (*Id.* at pp.18-32) shows that Plaintiff Smith made only generalized assertions against four MTPD officer who did not participate in Plaintiffs' arrest and detention. *See* Ex. 1, SMF ¶ 41. Plaintiffs fail to make any other reference to of these four MTPD officers -- let alone assert a cognizable claim against them (except for a one sentence mention of Sgt. Rich allegedly shouting to A.I. that 'they will tell her what to write' related to Plaintiffs'

8

fabrication of evidence claim, which Defendants addressed earlier. *See* Section IV, *supra*). For these reasons, all claims against them must be dismissed as matter of law.

"Where a complaint against an official in h[er] individual capacity does not 'establish the [official]'s personal involvement in the alleged wrongdoing,' judgment as a matter of law is appropriate." *Jefferies v. District of Columbia*, 917 F.Supp.2d 10, 25 (D.D.C., 2013) (internal citations omitted). A review of Plaintiffs' "Facts" section, pages 10-17, and Plaintiffs' "Statement of Claim," pages 18-32, fails to reveal allegations related to these four MTPD officers, other than one reference to Sgt. Rich, addressed in Section III, *supra*.    For these reasons, all claims against them must be dismissed as  matter of law.

They are  equally entitled to summary judgment for all claims Plaintiffs' have asserted against them based on: (a) their Declarations, in which all state they did not arrest, detain, or use force against (*See* Ex. 1, SMF ¶ 41; Declaration, Exhibits 5-8); and, (b) the BWC evidence which unequivocally shows that all four of these Defendants arrived after Plaintiffs were arrested and led out of the station and into police vehicles.  Ex. 1, SMF ¶ 41.

The "inquiry before th[is] Court is limited to whether [these four Defendants'] decision to assist in the arrest [and/or detention] was objectively reasonable in light of the circumstances and existing law."  *Carter v. Jess*, 179 F.Supp.2d 534, 544 (D. Md. 2001). Plaintiffs have plead no facts which would suggest Lieutenant Louie White, Sergeant W. Tabb, Sergeant G. Rich, and Officer Anderson acted unreasonably, given that their colleagues had already arrested Plaintiff. Given that assisting officers are not required to make independent assessment of probable cause before they assist other officers with an arrest that is already underway, no cause of action exists against Lieutenant Louie White, Lt. W. Tabb, Sergeant G. Rich, and Sgt. Anderson. *Id*.

9

Furthermore, they are equally entitled to assert qualified immunity against Plaintiffs' claims, and they respectfully incorporate on behalf of themselves all arguments, *infra*, in which Artis, Anguisaca and Crawford assert the defense of qualified immunity or any other argument. Wherefore, for these reasons, Defendants White, Tabb, Rich, and Anderson respectfully request that all claims pertaining to wrongful arrest and/or excessive force be dismissed with prejudice, because Plaintiffs have failed to allege any claim against them as a matter of law. Alternatively, the request that they be granted summary judgment for the same reasons the arresting officers, Anguisaca, Crawford, and Artis, be granted summary judgment, as set forth herein.

## VIII.  DEFENDANTS ANGUISCA, CRAWFORD AND ARTIS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS BASED ON THEIR QUALIFIED IMMUNITY

The doctrine of qualified immunity shields state actors, including police officers, who allegedly violate a plaintiff's constitutional rights. *Butera v. District of Columbia*, 235 F.3d 637, 645 (D.C. Cir. 2001). "Qualified immunity shields federal and state officials from suit unless a plaintiff alleges facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For a right to be "clearly established," the law must be sufficiently clear that every reasonable police officer would understand their actions were unlawful. *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A district court has the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The "clearly established law" prong of the qualified immunity analysis requires that there be a prior case with a defendant officer acting under similar circumstances, where the officer was

10

held to have violated the Fourth Amendment. *White v. Pauly* 500 U.S.73, 79 (2017). The prior case must render the unlawfulness of an officer's actions apparent. *Id*. (internal citations omitted). The standard of "clearly established" is not met, when courts rely on cases that simply describe general statement of law, such as *Tennessee v. Garner*, 471 U.S. 1 (1985) or *Graham v. Connor*. 490, U.S. 386 (1989), "which are inherently incapable of giving fair warning." *Id.* (internal citations omitted).

Qualified immunity allows law enforcement officers 'breathing room to make reasonable but mistaken judgments about open legal questions." *Al-Kidd*. at 743. It protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal citations omitted). In an excessive force claim, an officer will be held liable only "if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." *Rogala v. District of Columbia,* 161 F.3d 44 (D.C. Cir. 1998). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" is actionable under the Fourth Amendment. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973).

Once a defendant raises the defense of qualified immunity, the burden of proof falls to the plaintiff to show that the officer is not entitled to the defense. *Campbell v. District of Columbia*, 245 F. Supp. 3d 78, 85 (D.D.C. 2017). Summary judgment based upon qualified immunity is appropriate if the established law failed to put the officer on notice that his actions would be clearly unlawful. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The doctrine operates to protect a police officer when the officer "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (citing *Saucier,* 533 U.S. at 206).

11

Whether qualified immunity applies "generally turns on the objective legal reasonableness of an officer's actions, assessed in light of the legal rules that were clearly established at the time." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "[W]hile an officer's subjective state of mind is not relevant to the qualified immunity inquiry, the officer's perceptions of the objective facts animating the challenged conduct are." *Corrigan v. Glover*, 254 F.Supp.3d 184 (D.D.C 2017) (internal citations omitted).

To prevail on a claim of excessive force and/or unlawful arrest in violation of 42 U.S.C. § 1983 and successfully challenge Defendant's defense of qualified immunity, Plaintiff must establish that, at the time of the challenged conduct, she was denied a clearly established constitutional right under color of law. *Reichle v. Howard*, 566 U.S. at 664. A right must be sufficiently clear 'that every reasonable officer would [have understood] that what he is doing violates that right.'" *Id*. (citation omitted).

This court may choose to take the two prongs in any order: it may start with the first prong and inquire whether Plaintiff has shown Anguisaca, Crawford Kinney and Artis (" the arresting Defendants") lacked probable cause in arresting her, and whether under the totality of circumstances, their use of force was objectively unreasonable and therefore, excessive. Lack of probable cause for an arrest, and objectively unreasonable use of force during an arrest are both Fourth Amendment violations.

Should it so choose, this court could as easily start with the second prong by first determining whether, under the particular facts of this case, the law was clearly established so that the actions taken by the 'arresting Defendants' violated Plaintiff and her son's rights would have been understood by every reasonable officer that the arresting officers' actions violated the Plaintiff's and her son's rights. Should it start with the second prong, this Court would be guided

12

foremost by case law of the Supreme Court of the United States. The D.C. Circuit has held that the answer to the question of whether a right was 'clearly established,' is controlled by the following hierarchy of case law: "we look to cases from the Supreme Court and this court, as well as to cases from other courts exhibiting a consensus view." *Johnson v. District of Columbia*, 528 F.3d 969, 976 (D.C.Cir.2008). While the Supreme Court has not required that a case be directly 'on point' for a right to be clearly established, existing case law must have placed the constitutional question beyond debate. *Ashcroft v. al–Kidd*, 563 U.S. at 741.

As to the first prong, Anguisaca, Crawford Kinney and Artis did not violate Plaintiff's and her son's Fourth Amendment rights as a matter of law, because the uncontroverted video evidence and law of the jurisdiction establish that the three officers had probable cause to believe that Plaintiff committed the crime of assault when she was fighting another passenger and that N.I.V. assaulted two officers and obstructed them in the arrest of his mother.   Further, they did not use excessive force in arresting Plaintiff or her son; only force that was objectively reasonable under established case law. There was no constitutional violation  in the arrest and detention, or use of force against either Plaintiff.

Even assuming *arguendo* that the three officers were wrong about possessing probable cause to arrest Plaintiffs and that their force was not objectively reasonable, they are still entitled to qualified immunity because there is no clearly established law that would have provided them notice that their actions under a similar set of facts would be unlawful.

A.      **Plaintiff's Claims of Unlawful Seizure Under the Fourth Amendment**.

Of the seven remaining counts, four pertain to unlawful seizures under the Fourth Amendment. *See* ECF # 1, Counts 1, 2, 5, 8.  In Count 1, Plaintiff alleges a "failure to investigate," which Defendants construe as asserting a lack of probable cause. In Count 2,

Plaintiff Smith alleges false arrest and unlawful detention of Plaintiffs in violation of the Fourth Amendment; in Count 5, she alleges unlawful detention of a minor without legal justification; in Count 8 she alleges wrongful detention under the 4th Amendment.

**B.     <u>Standard Of Probable Cause</u>**

Probable cause exists where officers have knowledge of facts and circumstances which are reasonably trustworthy and "sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Brinegar v. U.S.*, 338 U.S. 160, 175–76 (1949); quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925). As explained in *Illinois v. Gates*, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Brinega*r, 338 U.S. at 175 (internal quotation marks and citation omitted. "It is clear that only the probability, and not prima facie showing, of criminal activity is the standard of probable cause." *Gates*, 462 U.S. at 235 (internal quotation marks and citation omitted). Nor does probable cause "demand any showing that [the arresting officer's belief in a suspect's guilt] be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion); accord *Ball v. United States*, 803 A.2d 971, 974 (D.C. 2002).

In *District of Columbia v. Wesby*, 588 U. S. 48, 56-62 (2018) the Supreme Court overturned the D.C. Circuit's decision that no probable cause existed when District of Columbia's MPD officers arrested multiple suspects for trespassing. *Id*. The Supreme Court held that facts known to the officers must not be viewed in isolation, because "[o]ur precedents

14

recognize that the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." *Id*. at 588 (internal citations omitted). A court must examine the facts from the standpoint of an objectively reasonable officer. *Id*. When determining whether probable existed, the Court noted that the legal standard for probable cause is not "a high bar." *Id*. (internal citations omitted). Under the totality of the circumstances known to the three arresting officers, objectively documented on the BWC video evidence. as well the officers' training, and experience, require a finding that probable cause existed for Plaintiffs' arrest.

**C.      The Uncontested Evidence Establishes That Defendants Had Probable Cause To Arrest Plaintiff As A Matter Of Law.**

On  March 15, 2024, Officers Crawford and Anguisaca arrested Plaintiff Smith and then Crawford and Artis arrested N.I.V. *See* Ex. 1, SMF, Exhibit 1 ¶¶ 26, 27, 36; Artis BWC, Ex. 9 at 18:03:50-18:04:31.

When the three officers arrested Plaintiffs, they had probable cause to arrest  within the constitutional bounds of the Fourth Amendment. "The Fourth Amendment protects against unreasonable searches and seizures …." *Virginia v. Moore*, 553 U.S. 164, 168 (2008). An arrest is lawful and constitutional if it is "based on probable cause." *Id*. at 173.

The three officer reasonably believed they had probable cause to arrest Plaintiff Smith for assault because they heard a description of suspect from the identified victim, A.I., who gave description of Plaintiff Smith to Officer Anguisaca as he entered the station. Ex. 1, SMF ¶ 8. The assailant was described in all blue from A.I. and from MTPD police communications, which had been contacted by Largo Metrorail station personnel. Ex. 1, SMF ¶¶  9-11; MTPD Police Communications Audio, Ex. 12 at 17:56:35 – 6:03:24.

15

It is significant that when Anguisaca and Crawford Kinney approached Plaintiff, when they had reasonable suspicion to detain her, she did not cooperate. Ex. 1, SMF ¶¶ 17-19. Her failure to cooperate then led to a period where she actively struggled and resisted against the officers. *Id*. They tried to handcuff her and take her into custody, and it took both of them to do it. *Id*. Officers Anguisaca and Crawford Kinney, reasonably relied on the description given by MTPD police communications and the victim A.I. to determine that they had probable cause to believe Plaintiff had committed the crime of assault.

Plaintiff also admitted to the officers after her arrest "I was just defending herself;" "I held her on the ground."   Artis Decl. Ex. 2 at ¶ 40. These statements are admissions and corroborate that she assaulted A.I. The victim, A.I., told the MTPD officers that Plaintiff Smith sat on her, and that she could not breathe. Ex. 1, SMF ¶ 10; Rich BWC, Ex. 10. Plaintiff's own Complaint states that Smith restrained A.I., who pleaded to be let go. *See* Complaint, ECF # 1 at p. 11.

Defendants had probable cause to arrest Plaintiff Smith for assault and battery in both Maryland and the District of Columbia. "[S]econd-degree assault in its simple form, embraces all of the criminal behavior that at common law would have constituted the crime of … assault and battery." *Love v. State*, 294 A.3d 206, 214 (Md. App. 2023) (citing *Lamb v. State*, 613 A.2d 402 (Md. App. 1992)). "Under Maryland law, a common-law assault consists of (1) an attempt to commit a battery or (2) an unlawful intentional act which places another in reasonable apprehension of receiving an immediate battery." *U.S. v. Redrick*, 841 F.3d 478, 485 (D.C. Cir. 2016). "A battery, in turn, is an unlawful application of force, direct or indirect, to the body of the victim." *Id*. (citing *U.S. v. Coleman*, 158 F.3d 199, 201 (4th Cir. 1998); *see also Garcia v.*

*Montgomery County, Maryland*, 145 F. Supp.3d 492, 523 (D. Md. 2015) (Battery consists of an intentional and unlawful touching, without consent, which is harmful or offensive.)

Similarly, in the District of Columbia, "[a]n assault is an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim." *Rawlings v. District of Columbia*, 820 F.Supp.2d 92, 107 (D.D.C. 2011) (quoting *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C.2007)). "A battery is an intentional act that causes a harmful or offensive bodily contact." *Id*; *see also Smith v. U.S.*, 306 A.3d 67, 78 (D.C.2023) (criminal battery or assault can rest on unintentional, offensive touching that that did not inflict bodily damage); *Johnson v. U.S.*, 559 U.S. 133, 139 (2010) ([T]he common-law crime of battery … consisted of the intentional application of unlawful force against the person of another.)).
"Under the Fourth Amendment, an arrest is lawful and constitutional if it is "based on probable cause." *Virginia v. Moore*, 553 U.S. 164, 173 (2006).

Under the totality of the circumstances, the evidence of the BWC,  the audio of the information sent by MTPD's Police Communications, Plaintiff Smith's own statements and actions, and the statements of victim A.I., prove, as a matter of law, that Officers Anguisaca and Crawford Kinney had objective probable cause to arrest Plaintiff. Even if, however, the two officers were mistaken in their belief that they had objective probable cause to arrest Plaintiff, they would nonetheless possess qualified immunity for any alleged Fourth amendment violation related to the arrest, as there is no clearly established law that would have put them on notice that their actions would be constitutional violations using facts similar to that of this case.

Likewise, Plaintiff  N.I.V., does not have a viable cause of action against Defendants. N.I.V. intervened in the arrest of his mother, by physically pulling and pushing at Crawford's and Anguisaca's arms. *See* Artis, BWC, Ex 9. at 18:03-50-1; Ex. 1, SMF ¶¶ 31-36. The officers had

17

probable cause to arrest Plaintiff N.I.V. for obstruction and hindering, as well as assault, although they just released him into the care of Child Protective Services. Ex. 1, SMF ¶ 45.

In Maryland, the offense of obstructing and hindering a police officer in the performance of his or her duty requires "(1) [a] police officer engaged in the performance of a duty; (2) [a]n act, or perhaps an omission, by the accused which obstructs or hinders the officer in the performance of that duty; (3) [k]nowledge by the accused of facts comprising element (1); and (4) [i]ntent to obstruct of hinder the officer by the act or omission constituting element (2)." *Titus v. State*, 32 A.3d 44, 50-51 (Md.2011) (citing *Cover v. State*, 466 A.2d 1276, 1284 (Md.1983). In defining what constitutes an act or omission in furtherance of the offense of obstruction and/or hindering of a police officer, the Court of Appeals of Maryland – now the Supreme Court of Maryland – cited with approval a definition which defined "obstructing as an act or omission making it more difficult for the police to carry out their duties." *Id.*

The BWC evidence unequivocally shows N.I.V. grabbing the arms of the police officers, interfering, and obstructing the arrest of his mother, immediately prior to his being pepper-sprayed and handcuffed. *See* Artis, BWC, Ex 9. at 18:03-50-1; Ex. 1, SMF ¶¶ 31-36. Probable cause existed to detain and/or arrest Plaintiff N.I.V. for obstruction and hindering police officers in the performance of their duties, as well as for assault on a police officer.

Accordingly, the three arresting Defendants had probable cause to arrest Plaintiff Smith for assault, and N.I.V. for assault and hindering a police officer. Therefore, Plaintiff Smith and N.I.V.'s alleged Fourth Amendment violations of wrongful arrest, search and seizure, and failure to investigate causes of action under 42 U.S.C. § 1983 fail as a matter of law, and summary judgment must be granted to the three Defendants.

**D.**     **There Is No Clearly Established Law To Be Free From Arrest Under These Facts**

The three arresting Defendants will be shielded by qualified immunity in their arrests even if a constitutional violation occurred, but a reasonable officer, armed with the information that they possessed, could have believed Plaintiffs' arrest lawful. *Anderson v. Creighton*, 483 U.S. at 641. Even if the three arresting Defendant mistakenly, but reasonably, concluded probable cause was present, they are still entitled to qualified immunity.

Summary judgment based upon qualified immunity is appropriate if the established law failed to put the officer on notice that his actions would be clearly unlawful. *Saucier v. Katz*, 533 U.S. at 202. Qualified immunity protects an officer even when the officer mistakenly violates a constitutional standard due to reasonable misunderstanding of the law governing the officer's circumstances. *See Brosseau v. Haugen*, 543 U.S. at 198.

The case *of District of Columbia v. Wesby*, 588 U. S. 48 (2018) would not have made clear to a reasonable officer that no probable cause existed in the facts known to these three Officers that their actions would be unlawful.  An officer is not required to believe the protestations of innocence of  suspect, and here, Plaintiff's actions of staying in the train, waiting for it to leave, suggested a "guilty state of mind." *Wesby v. D.C.*, 583 U.S. at 59, 62 (scattering at sight of officers and hiding suggest guilty state of mind and totality of circumstances used to assess probable cause, not protestation of innocence). For these additional reasons, the three arresting officers are entitled to qualified immunity and Plaintiffs' claims of unlawful seizure must be dismissed.

**IX**.     **DEFENDANT'S OBJECTIVELY REASONABLE USE OF FORCE REQUIRES DISMISSAL OF PLAINTIFF'S CLAIM OF EXCESSIVE FORCE UNDER § 1983**.

Claims based on a police officer's use of "excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [one's] person" are "properly analyzed under the

Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. at 388. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. A court must consider such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

It is well-settled that "an officer has the authority to use some degree of physical coercion or threat thereof during the course of an arrest, and not every push or shove, even if it may later seem unnecessary … violated the Fourth Amendment." *Dormu v. D.C.*, 795 F Supp. 2d 7, 21-22 (D.D.C. 2011) (citing *Rogala v. D.C.*, 161 F. 3d at 55 (quoting *Graham v Connor*, 490 U.S. at 395-97)). "In determining whether an officer's use of force was reasonable … [t]he severity of the injury the plaintiff suffered is also relevant." *Id*. (citing *Wardlaw v Pickett*, 1 F.3d 1297, 1304 n. 7 (D.C. Cir. 1993) ("stating that although the severity of injury is not by itself the basis for deciding whether the force used was excessive … it is a relevant factor.")). "An officer will be found to have used excessive force only if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." *Garay v. Liriano*, 943 F. Supp. 2d 1, 19 (D.D.C. 2013).

Plaintiffs have alleged in Count Three that the officers violated their Fourth Amendment right under 42 U.S.C. § 1983, by allegedly: (a) using excessive force in arresting her. (Complaint, Count Three, ECF #1) and (b) assaulting N.I.V. which Defendants construe as a claim of excessive force on behalf of N.I.V. *Id*. at Count Four; (c) using inappropriate (sexual) conduct when Crawford placed his shoe near N.I.V.'s groin (*Id.* at Count Six). A plaintiff's claim

that an officer has used excessive force is to be analyzed under the Fourth Amendment and its objective reasonableness standard. *Graham v. Connor*, 490 U.S. at 390- 95.

**A.     The Arresting Officers' Use Of Force Was Reasonable**

It is well settled that an officer may use his limbs and body weight in the context of a suspect resisting arrest or of evading arrest by attempted flight. *See, e.g., Armbruster v. Frost*, 962 F.Supp.2d 105, 114 (D.D.C., 2013). In *Armbruster*, the District Court reviewed allegations that the plaintiff was brought to the ground by an officer; while a second officer secured plaintiff's right arm, the first officer placed his knee over her left arm and then on her back while handcuffing her. *Id.* The Court held that no excessive force occurred under the facts of that case. *Id. See also Cromartie v. District of Columbia*, 479 F. App'x 355, 357 (D.C. Cir. 2012) (per curiam) (a plaintiff slammed to the ground and forcibly there kept by officers while handcuffed falls within realm of the usual amount of force commonly used by officer to effect an arrest).

Here, Plaintiff can be seen on video struggling against Officers Anguisaca and Crawford, providing enough resistance to her arrest that the effort if both officers was needed to handcuff her. Ex. 1, SMF ¶¶ 17-26;  Artis BWC, Ex. 9 at 18:03:47- 18:04:20. Under a totality of circumstances, the facts of this case are most closely aligned with prior cases finding more serious uses of force that what the officers used here, to be objectively reasonable for a resisting and fleeing suspect. *See Scott v. District of Columbia*, 101 F.3d, 748, 759 (D.C Cir. 1996) (officers grabbing plaintiff and slamming him to the ground, and putting their knees on his neck, back, and legs was reasonable where plaintiff acted erratically and tried to escape from the police cruiser); *Martin v. Malhoyt*, 830 F.2d 237, 262 (D.C. Cir. 1987) (officers grabbing plaintiff around the waist, throwing him into driver's seat, and slamming the door on his leg was reasonable because plaintiff was causing a traffic hazard and was a flight risk); *Robinson v.*

*District of Columbia*, 2006 WL 2714913, at *4 (pushing plaintiff, shoving him into the hood of his car, holding him down while putting handcuffs on him was reasonable to effect the arrest).

There is an abundance of cases in this jurisdiction where more serious uses of force than the minimal force Crawford and Anguisaca used in arresting Plaintiff' were held to be objectively reasonable. In *Cutchin v. District of Columbia, supra,* two officers who arrested a subject for fare evasion, pinned the suspect to the ground using an officer's full body weight while squeezing the handcuffs tighter, were held to have used reasonable force. *Cutchin*, 369 F.Supp.3d at 128. Although the plaintiff may have experienced pain or discomfort, that court held that the plaintiff's pain and discomfort did not render the officers' use of force unreasonable. *Id.*

In *Cromartie v. District of Columbia*, the plaintiff was slammed to the ground by officers and forcibly kept there while handcuffed; however, the officers' use of force was held to be no more than the ordinary type of force used by officers in effecting an arrest. *Cromartie v. District of Columbia*, 479 F. App'x at 357. In *Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011), the court ruled that the officers' use of force was not excessive where the plaintiff's arm was pulled behind her back and she was pushed against a stone column. *Id*. In *Wasserman v. Rodacker*, 557 F.3d 635, 641 (D.C. Cir. 2009), the arresting officer applied force to the plaintiff's arm when plaintiff was not resisting or moving; the court held that the force was not excessive because officers have the authority to use some "degree of coercion" to gain compliance in effecting an arrest. *Id.* Finally, in *Goolsby v. District of Columbia*, 317 F.Supp.3d 582, 594-95 (D.D.C 2018), the court found that the arresting officer did not use excessive force when he violently slammed the plaintiff to the ground and twisted the plaintiff's arms in order to handcuff him.

22

The force that Anguisaca and Crawford used on Plaintiff Smith, *i.e.*, holding her arm, briefly holding her down in the train car seat, handcuffing her - all occurred where Plaintiff can be seen to resist arrest. Ex. 1, SMF ¶¶ 17-26 . The D.C. Circuit has held that a U.S. Park Police officer who deployed her Taser on a subject who was resisting arrest by pulling away twice did not use excessive force. *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015). There, the Circuit court relied on video evidence in arriving at its decision that no excessive force was used in deploying the Taser, rejecting as "visible fiction" Lash's protestations that he did not resist arrest. *Id*. at 7. The Court held that the force used by Officer Lemke violated no clearly established law and she was entitled to qualified immunity. *Id*.

The force used by Officer Crawford and Anguisaca was well below the level of the force of a Taser deployment and was within the accepted standard of what has been held to be objectively reasonable by the Supreme Court -- whether there was resistance or not. Crawford and Anguisaca did not violate Plaintiff's Fourth Amendment rights in the force used to arrest and handcuff her. Plaintiff's claim for excessive force under 42 U.S.C. § 1983 must be dismissed as a matter of law and summary judgment must be granted to the two officers because their use of was objectively reasonable and there no clearly established law that would have put him and every reasonable officer on notice that his actions were unlawful.

For the same reasons Officers Crawford and Artis' handcuffing of N.I.V and pulling him out of the train car was objectively reasonable. N.I.V. is seen on video engaged in an assault of the officers, and obstructing the officers and interfering with their arrest of Plaintiff Smith. Ex. 1, SMF ¶¶ 28-36. When Artis used a short burst of OC spray on N.I.V.,  she did so to  prevent N.I.V. from obstructing and interfering with Crawford and Anguisaca's arrest of Plaintiff Smith and to prevent any further assault by N.I.V. on the two officers. Ex. 1, SMF ¶¶ 46-76. There is no

23

case law in this jurisdiction which has held that the use of OC spray (pepper spray) on an assaultive and restrained suspect is a constitutional violation. *Wilkins v. District of Columbia, et al.*, 2020 WL 581691 *12, No. 17-884 (CKK) (09/30/2020). A review of other circuits in the country, however, provides a governing principle regarding the use of OC spray which may be distilled to the following: the use of pepper spray is unreasonable if deployed on a restrained and compliant individual. *Id. See*, e.g., *Henry v Cty of Flint, Mich*., 814 F. App'x 973, 983 (6th Cir. 2020) (Not excessive force to use pepper spray to induce compliance in suspect trying to get away).

In Count Six, Plaintiff has labeled a use of force as an inappropriate 'sexual assault.' This claim apparently refers when Officer Crawford pulled N.I.V. out of the train car and N.I.V. was sitting on the ground, holding his face from the pepper spray. Officer Crawford initially held onto N.I.V. by the handcuffs but then let go of N.I.V. to use his police radio. Crawford Decl., Ex. 4 at ¶¶ 26-7. Because Office Crawford had to forego using his hands to hold onto N.I.V. when he used his radio, he substituted using his legs to physically control N.I.V., bringing them around on either side of N.I.V.'s while N.I.V. was hunched over on the ground. Crawford Decl., Ex. 4 at ¶¶ 28-32. Contrary to Plaintiff's allegations, Officer Crawford's foot, does not touch N.I.V.'s groin, but his thigh. Ex. 1, SMF ¶¶ 31-2, with photos. There is no evidence from Plaintiff of a sexual intent in Officer Crawford's actions of restraining N.I.V. Rather, Plaintiff, has simply tried to recast a brief moment when Officer Crawford placed his sneakered foot under N.I.V.'s thigh to secure the minor; Crawford did this when he stopped holding N.I.V.'s handcuffs in order to use his hands to place a call Police Communications on his police radio Ex. 1, SMF ¶¶ 30-2. Plaintiff's claims are innuendo only, lacking any evidence of intent or wrongdoing. Officer Crawford followed his training of keeping physical control of a detainee in his custody. *Id*.

Further, Plaintiff has adduced no evidence of any intent to "sexually assault" N.I.V., offering only the happenstance placement of Officer Crawford's sneakered foot placement under N.I.V.'s thigh.

In *Terry v. Ohio*, the Supreme Court noted that law enforcement officers, when searching a suspect, could make contact even with sexually intimate areas, such as a suspect's groin and testicle area. *Terry v. Ohio*, 392 U.S. 1, 17 n.13(1968). Here, Officer Crawford was not even engaged in the more intrusive act of searching N.I.V. -- just maintaining physical control – and there was no contact with N.I.V.'s groin, nor was there any contact with N.I.V.'s thigh with the officer's hands, such as what occurs in a search.   Officer Crawford's sneakered foot under N.I.V.'s thigh is much less intrusive than what the Supreme Court allowed under *Terry, supra*. There is no reason to believe that Officer Crawford, or any other reasonable officer, would think that maintaining control of a handcuffed suspect, sitting on the ground, by positioning one's legs around the person in order to use one's hands to radio Police Communications would be violative of the Fourth Amendment, no is there any case law that would have instructed Officer Crawford to think it would be a violation.

In another case in this District, for allegations of a more serious sexual nature, that the officer repeatedly fondled a suspect's genitals; the court held that qualified immunity applied, due to lack of Supreme Court or Circuit Court precedent on point stating otherwise.  *See Stevenson v. District of Columbia*, 639 F.Supp.3d at 131.

In *Stevenson*, the district court found  precedent from either the Supreme Court or Circuit holding that a sexual assault committed by a police officer under the facts alleged by the plaintiff violated the Fourth Amendment. *Id*.

## X.    CONCLUSION

Wherefore, for the reasons stated herein, and for other and such good cause as this Court deems necessary, the Defendants move that (a) all nine counts of Plaintiff's Complaint against them in their official capacity be dismissed under Rules 12(b)(1) and 12(b)(6); (b) Count Nine (kidnapping) be dismissed as a matter of law under 12(b)(b); (c) Count Seven be dismissed as a matter of law under 12(b)(6); all nine counts be dismissed against them on the basis of qualified immunity, as there is no evidence of any constitutional violation by any of them and/or there is no clearly established law based on case law with facts similar to this case, that would have put the Defendants on notice that their actions were unconstitutional.

Further, Defendants Tabb, Rich, White and Anderson move for dismissal under 12(b)(6) for failure to state a claim against them as matter of law.  Defendants therefore move that Plaintiff's Complaint be dismissed with prejudice.

Respectfully Submitted,

/s/ Janice L. Cole
Janice L. Cole #440351
Senior Counsel II
300 Seventh Street,
Washington, D.C. 20001
(202) 962-2543
(202) 962-2550 (facsimile)

/s/ Neal M. Janey, Jr.
Neal M. Janey, Jr., Bar No.:  995449
Senior Counsel II, WMATA
300 7th Street, S.W.
Washington, D.C.  20024
Telephone: (202) 962-1067
Facsimile:  (202) 962-2550
Email: nmjaney@wmata.com
Counsel for Defendants

26